1   SCOTT N. SCHOOLS (SCBN 9990)
    United States Attorney

2
    BRIAN J. STRETCH (CSBN 163973)
3   Chief, Criminal Division

4   WENDY THOMAS (NYBN 4315420)
    Special Assistant United States Attorney

5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, CA 94102
        Telephone: (415) 436-6809
7       Facsimile: (415) 436-7234

8   SHUBHRA SHIVPURI
    Law Clerk

9
    Attorneys for Plaintiff

10                      UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13

14
    UNITED STATES OF AMERICA,        )     No. CR 07-0462 MAG
15                                    )
                 Plaintiff,           )
16                                    )     UNITED STATES' TRIAL BRIEF
            v.                        )
17                                    )     Trial Date: November 13, 2007
    WILLIAM H. SPIKER,                )     Time: 8:30 A.M.
18                                    )     Court: Hon. Joseph C. Spero
                 Defendant.           )
19  _____   )

20                      **I. STATEMENT OF THE CASE**

21  A. OFFENSES

22          On July 19, 2007, the United States Attorney filed a two-count Information

23  charging the defendant as follows:

24          1.  On or about October 26, 2006, within the boundaries of an area administered

25  by the Presidio Trust, the defendant, William H. Spiker ("Spiker" or "the defendant"),

26  did operate and was in actual physical control of a motor vehicle while under the

27  influence of alcohol to a degree that rendered him incapable of safe operation, in

28  violation of Title 36, Code of Federal Regulations, Section 1004.23(a)(1), a Class B

    UNITED STATES' TRIAL BRIEF
    CR-07-0462 MAG                    1

1  Misdemeanor.

2  2. On or about October 26, 2006, within the boundaries of an area administered

3  by the Presidio Trust, defendant Spiker did operate and was in actual physical control of

4  a motor vehicle while having at least 0.08 percent, by weight, of alcohol in his blood or

5  breath, in violation of Title 36, Code of Federal Regulations, Section 1004.23(a)(2), a

6  Class B Misdemeanor.

7  B. FACTS IN DISPUTE

8  On October 26, 2006, at approximately 1:43 a.m., U.S. Park Police Officer

9  Michael Griffin ("Officer Griffin") was on Presidio Boulevard between Pacific and

10  Jackson Streets when he observed an aqua green Jeep Cherokee ("the Jeep") traveling

11  northbound on Presidio Boulevard.  Officer Griffin observed the Jeep swerve to the

12  right through the intersection, coming within inches of a parked vehicle before it made a

13  hard correction to the left and continued down the road.

14  Concerned for the safety of the Jeep's driver, other motorists, and pedestrians,

15  Officer Griffin alerted other Park Police units of the Jeep's erratic driving and possible

16  destination.  Shortly after the broadcast, Officer Ari Wong ("Officer Wong") and his

17  partner, Officer Michael Cameron ("Officer Cameron"), observed an aqua green Jeep

18  pass their vehicle, going westbound on Lincoln Boulevard in the area of Presidio

19  Boulevard at a high rate of speed.

20  Officer Wong observed the Jeep jump off the roadway on to the sidewalk in

21  front of 1028 Girard Road, San Francisco, California, 94129.

22  Officer Wong and Officer Cameron stopped the Jeep at 1028 Girard Road and

23  identified the driver as Spiker.  Officer Griffin proceeded to 1028 Girard Road and

24  confirmed the Jeep and the driver were the same car and person he had observed earlier

25  on Presidio Boulevard.

26  Upon approaching the vehicle, Officer Wong detected a strong odor of alcoholic

27  beverage emanating from the vehicle and Spiker.  Officer Wong asked Spiker how

28  much he had to drink.  Spiker responded that he had three beers, four hours ago.  Spiker

UNITED STATES' TRIAL BRIEF
CR-07-0462 MAG                                    2

1   subsequently changed his estimation of alcohol consumption to eight or nine beers over

2   an unknown period of time.  Spiker also stated that he had been drinking Miller beer at

3   home, that he last slept in the afternoon on October 25, 2006, that his last meal was

4   turkey, that he was heading home from Walgreens, that he felt tired, that he had been

5   taking prescription medications (including Percodan), and that he started drinking

6   around 5:45 p.m. the previous day.  Officer Wong observed Spiker consistently slurring

7   his speech when answering questions.  His appearance also gave other indications of

8   being under the influence, including having red and watery eyes.

9           Officer Wong observed a half empty Miller Light Beer bottle on the floorboard

10  of the floor of the front of the vehicle and two twenty count packs of Miller Light

11  bottled beer in the rear of the vehicle.  One of the twenty count packs was missing four

12  beer bottles.  Officer Wong also found a receipt in the car that indicated the beer had

13  been purchased approximately one hour before Spiker was stopped.

14          Officer Jason Collins ("Officer Collins") responded to the location and

15  administered Standardized Field Sobriety Tests to Spiker.  Officer Collins directed

16  Spiker to a well lit, flat, dry sidewalk near the rear entrance of the building on 1028

17  Girard Road.  Officer Collins conducted three Standard Field Sobriety Tests: the One

18  Leg Stand, the Rhomberg Stand, and the Horizontal Gaze Nystagmus.  Officer Collins

19  informed Spiker that he would give verbal instructions followed by a physical

20  demonstration of each test.  Once that was complete, he would be able to ask questions

21  about the test.

22          (a)  ONE LEG STAND TEST

23          Officer Collins instructed Spiker to stand with his feet together and with his

24          hands by his sides.  Spiker was instructed to lift his leg and count out loud,

25          "one-thousand-one, one-thousand-two, one-thousand-three . . ." until he reached

26          one-thousand-thirty.  Officer Collins instructed that if Spiker dropped his foot at

27          any point, he should stop counting, lift his foot back up, and begin counting

28          where he had left off.  On his first two attempts, Spiker lifted his right foot

UNITED STATES' TRIAL BRIEF
CR-07-0462 MAG                    3

1   approximately three inches off of the ground and was unable to get past, "one-

2   thousand one" before dropping his foot.  On his third attempt he again lifted his

3   foot approximately three inches off the ground.  This time, instead of counting,

4   "one-thousand one, one-thousand two.." he counted, "one, two, three."  He

5   counted at a rapid pace but was unable to get past "fourteen" before dropping

6   his foot.  He also failed to look at his foot while performing the test.  On his

7   fourth attempt, Spiker again lifted his foot approximately three inches, failed to

8   look at his foot, and counted, "one, two, three..."  This time he counted up to

9   thirty-seven before he stopped.

10  (b) RHOMBERG STAND TEST

11  Officer Collins instructed Spiker to stand with his feet together and his hands at

12  his sides.  Officer Collins informed him that when instructed to begin, Spiker

13  should close his eyes, tilt his head back, and count thirty seconds to himself.

14  While the Officer was giving Spiker instructions, Spiker closed his eyes, tilted

15  his head back and placed his right index finger on his nose.  Officer Collins

16  instructed Spiker not to begin until he told him to, and that he would not have to

17  touch his nose during the test.  When Spiker was allowed to start the test, he

18  placed his right index finger on his nose and asked the officer, "Do I touch my

19  nose?"  Officer Collins did not respond, and Spiker placed his right hand back at

20  his side and continued the test.  While performing the test, Spiker's body

21  swayed approximately two to three inches to his right.  Spiker finished counting

22  at approximately twenty-five seconds.  Spiker's body swayed from side to side

23  during the entire test.

24  (c)  HORIZONTAL GAZE NYSTAGMUS TEST

25  Officer Collins instructed Spiker to stand with his feet together and hands by his

26  sides, and keep his head straight forward.  Officer Collins pressed down on the

27  top of a pen held six to eight inches in front of Spiker's face.  Officer Collins

28  asked Spiker to do the same.  On his first attempt, Spiker missed the pen and

UNITED STATES' TRIAL BRIEF
CR-07-0462 MAG                    4

1    went past it.  He was able to press down on the top of the pen on his second

2    attempt.  Officer Collins instructed Spiker to keep his head straight and follow

3    the movements of the pen with his eyes only.  Spiker was able to track the pen,

4    but lacked smooth pursuit.  The officer observed nystagamus in both eyes at

5    maximum deviation and approximately forty-five degrees.

6    Spiker failed all of the sobriety tests. When asked if he had taken any medication,

7    Spiker answered in the affirmative, and that he was under doctor's care for a pinched

8    nerve in his neck.  Spiker said he was taking Percodan for pain but could not provide

9    the time of his last dose.  The defendant was unable to perform the PAS (Preliminary

10   Alcohol Screen).  Spiker was placed under arrest for suspicion of Driving Under the

11   Influence and was transported to San Francisco County Jail for blood testing.  The

12   blood was collected at 3:35 a.m. The blood test later revealed an ethanol level of .11%.

13   Thereafter, Spiker was released.

14   C.  APPLICABLE LAW

15   1. COUNT ONE - 36 C.F.R. §1004.23(a)(1): Driving Under the Influence of Alcohol

16   a.  The defendant operated or was in actual physical control of a motor

17   vehicle

18   b.  While under the influence of alcohol and/or drugs;

19   c.  To a degree that rendered operation of the vehicle unsafe;

20   d.  On land administered by the Presidio Trust, in San Francisco, California.

21   2. COUNT TWO - 36 C.F.R. §1004.23(a)(2): Driving with a Blood or Breath Alcohol

22   Level of 0.08% or Greater

23   a.  The defendant was in actual physical control of a motor vehicle;

24   b.  While his blood or breath alcohol level was at or over .08%;

25   c.  On land administered by the Presidio Trust, in San Francisco, California.

26   D. DISCOVERY AND DEFENDANT'S USE OF EXPERT TESTIMONY

27   The United States disclosed Rule 16 materials at the defendant's request soon

28   after the initial appearance.  The United States has satisfied its obligations under Brady

UNITED STATES' TRIAL BRIEF
CR-07-0462 MAG                          5

1  and the Jencks tests.  The United States sent a Giglio request to the appropriate agencies

2  and has not as of this date received any responsive Giglio material.  If any material is

3  received, the United States will promptly disclose it.

4      The United States has received no Rule 16 materials from the defendant.  The

5  United States has requested all Rule 16 and Jencks material, and reasserts that demand

6  here.  The United States will move to exclude any defense materials that should have

7  been disclosed as Rule 16 material.  Fed. R. Crim. P. 16(d)(2).

8  E. SPEEDY TRIAL CLOCK

9      Since both of the offenses charged in this case are Class B Misdemeanors, the

10  Speedy Trial Act does not apply.

11  F. EXHIBIT LIST

12      The United States intends to introduce the following at trial as evidence, but

13  reserves the right to amend this list:

14      1. A map or diagram depicting the location of the stop - this exhibit will be

15  introduced through Officer Griffin.  This exhibit is being introduced for the following

16  reasons: (a) to illustrate the path the defendant drove; (b) to illustrate the distance

17  between where the defendant was seen by Officer Griffin and where he was stopped by

18  Officers Wong and Cameron; (c) to illustrate that the area the defendant was driving in

19  was within the Presidio. (*See attached* Exhibit 1).

20      2. An open beer bottle that was seized from the defendant's car when the

21  defendant was arrested - this exhibit will be introduced through Officer Ari Wong or

22  Officer Michael Cameron.  This exhibit is being introduced to bolster the government's

23  argument that the defendant was under the influence of alcohol when he was arrested.

24  (*See attached* Exhibit 2).

25      3. An Arcadia Blood Test Request - this exhibit will be introduced through

26  Officer Ari Wong or Elaine Ermitano.  This exhibit is being introduced to establish that

27  a blood sample was taking from the defendant, the time the blood draw took place, and

28  the chain of custody and authenticity of the blood sample.  (*See attached* Exhibit 3).

UNITED STATES' TRIAL BRIEF
CR-07-0462 MAG                          6

1      4. An Arcadia Phlebotomy Check List - this exhibit will be introduced through

2   Elaine Ermitano.  This exhibit is being introduced to establish the following: that the

3   defendant's blood was drawn in a medically approved manner; that prior to the blood

4   draw, the extraction site was cleansed with a nonalcoholic solution; that the person who

5   drew the blood in this case is medically trained  to take blood samples; that the blood in

6   the vial analyzed in this case is that of the defendant; that the blood drawn was placed

7   in a vial containing the appropriate medically approved preservative and anticoagulant,

8   insuring the integrity of the sample; to ensure the chain of custody and authenticity of

9   the blood sample. (*See attached* Exhibit 4).

10      5.  The Toxicology Report - this exhibit will be introduced through Pavlos

11  Karamanidis or Dr. Nikolas P. Lemos.  This exhibit is being introduced to establish that

12  the blood sample taken from the defendant was analyzed by the Forensic Laboratory at

13  the Office of the Chief Medical Examiner in San Francisco and analytical results of the

14  specimen showed a .11% blood alcohol content. (*See attached* Exhibit 5).

15      6.  Curriculum Vitae, Dr. Nikolas P. Lemos - this exhibit will be introduced

16  through Dr. Nikolas P. Lemos.  This exhibit is being introduced to establish Dr. Lemos'

17  qualifications as an expert in the field of forensic toxicology and forensic blood alcohol

18  analysis and interpretation.  (*See attached* Exhibit 6).

19  G.  STIPULATIONS

20      Currently, there are no stipulations.

21      1.  The United States already proposed, and defense counsel rejected, the

22  following stipulation:

23      The parties stipulate that: (1) the defendant's blood was drawn in a medically

24  approved manner and that, prior to the blood draw, the extraction site was cleansed with

25  a nonalcoholic solution; (2) that the person who drew the blood in this case is medically

26  trained to take blood samples; (3) that the blood in the vial analyzed in this case is that

27  of the defendant; (4) that the blood drawn was placed in a vial containing the

28  appropriate medically approved preservative and anticoagulant, insuring the integrity of

UNITED STATES' TRIAL BRIEF
CR-07-0462 MAG                              7

1  the sample; (5) the "chain of custody" was not violated and the blood sample tested by

2  the Chief Medical Examiner's office was authentic.

3       The above stipulation was proposed in order to excuse the testimony of Ms.

4  Elaine Ermitano.

5       2.  The United States proposes the following stipulation:

6       The parties stipulate that: (1) the blood sample in the toxicology report is the

7  blood sample taken from the defendant on October 26, 2006; (2) the forensic alcohol

8  analyst who analyzed the blood is qualified to analyze blood samples for blood alcohol

9  content; (3) the forensic alcohol analyst who analyzed the blood did so in an acceptable

10  manner; (4) the blood sample was not leaking, tampered with, or otherwise tainted; (5)

11  the analysis of the defendant's blood sample yielded a blood alcohol content of 0.11%.

12       The United States proposes this stipulation in order the excuse the testimony of

13  Mr. Pavlos Karamanidis.

14

15  DATED:__10/29/2007_____                    Respectfully Submitted,

16

17                                                  SCOTT N. SCHOOLS
                                                    United States Attorney
18

19
                                                    /s/ Shubhra Shivpuri_____
20                                                  SHUBHRA SHIVPURI
                                                    Law Clerk
21

22
                                                    /s/ Wendy Thomas_____
23                                                  WENDY THOMAS
                                                    Special Assistant U.S. Attorney
24

25

26

27

28

UNITED STATES' TRIAL BRIEF
CR-07-0462 MAG                    8